EXHIBIT 1

1          UNITED STATES DISTRICT COURT

2        FOR THE EASTERN DISTRICT OF MICHIGAN

3               SOUTHERN DIVISION

4

5   UNITED STATES OF AMERICA,

6              Plaintiff,           Case No.  16-20218

7      -vs-

8                                   Detroit, Michigan

9   NORMAN SHY,                     May 11, 2016

10             Defendant.

11   ----------------------------/

12              TRANSCRIPT OF PLEA HEARING

13      BEFORE THE HONORABLE VICTORIA A. ROBERTS

14        UNITED STATES DISTRICT COURT JUDGE

15

16   APPEARANCES:

17   For the Government:          J. Michael Buckley
                                  Frances Carlson
18                                U.S. Attorney's Office
                                  211 W. Fort Street, Ste 2001
19                                Detroit, MI 48226

20

21   For the Defendant:          Christopher Andreoff (P10193)
                                  Jaffe, Raitt,
22                                27777 Franklin Road, Suite 2500
                                  Southfield, MI 48034-8214
23

24   Proceedings taken by mechanical stenography, transcript

25   produced by computer-aided transcription

```
1                    Detroit, Michigan

2                Wednesday, May 11, 2016

3                 (At about 2:04 p.m.)

4                      - - -

5             (Call to Order of the Court)

6             THE CLERK OF THE COURT:  The Court calls the case of United

7    States of America versus Norman Shy, case number 16-20218.  Counsel, please

8    state your appearances for the record.

9             MR. BUCKLEY:  Good afternoon, Your Honor.  May it please the Court.

10   Michael Buckley appearing on behalf of the United States.

11            THE COURT: Good afternoon.

12            MS. CARLSON:  Frances Carlson appearing on behalf of the United

13   States.

14            MR. ANDREOFF:  Your Honor, Christopher Andreoff appearing on

15   behalf of Mr. Norman Shy, who's present.

16            THE COURT: Thank you, everyone.  You can take your seats.

17       This is the time the Court has set to consider Mr. Shy's guilty pleas to both

18   Counts of the Information the Government has filed against him.  Conspiracy to

19   Commit Federal Program Bribery is charged and Federal Income Tax Evasion is

20   charged as well.  Good afternoon, Mr. Shy.

21            MR. SHY:  Good afternoon, Your Honor.

22            THE COURT: And if you would just point the microphone to you, you

23   can answer all our questions seated.  Just make sure you use the microphone.

24       Mr. Shy, the Court is going to place you under oath and will have questions of

25   you.  Counsel may have questions of you as well.  The point of the questioning is to
```

1    make certain that you do want to enter a guilty plea today to these charges.  We need

2    to make certain that you understand all the rights that are going to be affected once

3    this Court accepts your guilty plea.  We need to know that other than what is in this

4    Rule 11 Agreement that no one has made any kind of promise or representation to

5    you, and we need to know that you are competent to plead guilty.  So that's the point

6    of the questioning.

7        If you have questions before you answer any of our questions, please feel free

8    to talk to Mr. Andreoff.  Once you give answers, we're going to assume the answers

9    are truthful and that you understood the question and -- the questions -- and if you

10   don't give truthful answers you could face another charge, that would be lying under

11   oath, or the Court may take that into account in deciding what your sentence should

12   be.  Do you have any questions before we get underway?

13       MR. SHY:  I do not.

14       THE COURT: All right.  We'll place you under oath.

15       THE CLERK OF THE COURT: Will you raise your right hand please?

16       **NORMAN SHY, SWORN UNDER OATH AT ABOUT 2:06 P.M**.

17       THE COURT:  Mr. Shy, please give me your full name.

18       MR. SHY:  Norman Harold Shy.

19       THE COURT: And Mr. Shy, have you used any other names?

20       MR.  SHY:  No.

21       THE COURT: Please give me your date of birth.

22       MR.  SHY:  October 16, 1941.

23       THE COURT: And just back away a little bit from the microphone.  Mr.

24   Shy, tell me what city you currently live in.

25       MR. SHY:  Franklin, Michigan.

1       THE COURT: And how long have you been at that address in Franklin?

2       MR.  SHY:  Approximately two years.

3       THE COURT: Does anyone live there with you?

4       MR. SHY:  Yes.

5       THE COURT: Who?

6       MR. SHY:  My wife.

7       THE COURT: And do you have any children, Mr. Shy?

8       MR.  SHY:  I do.

9       THE COURT: Can you give me their ages?

10      MR. SHY: I'll get in trouble here.  I believe one is 45 or 46 and one is 43

11  and our daughter is 38.

12      THE COURT: Okay.  And Mr. Shy, tell me a little bit about your

13  education please.

14      MR.  SHY:  I'm a graduate of Mumford High School in Detroit.  I've got a

15  Bachelors Degree from Michigan State, a Masters Degree from Wayne State and 21

16  hours in toward a Ph.D. at Wayne State.

17      THE COURT:  Is that something you're currently working on?

18      MR.  SHY:  No I'm not, Your Honor.

19      THE COURT:  Tell me about your employment, Mr. Shy.

20      MR. SHY:  I'm currently retired.

21      THE COURT: And what are you retired from?

22      MR. SHY:  Had a sales company called Allstate in Detroit.

23      THE COURT: How long did you run Allstate?

24      MR. SHY:  For approximately 40-some years.

25      THE COURT: And what was the business of Allstate?

1          MR. SHY:  Primarily educational supplies.

2          THE COURT: And you said that business was located in the city of

3    Detroit?

4          MR. SHY:  No, it was located wherever I lived.  I worked out of my

5    home.

6          THE COURT: Oh, I see.  Okay, thank you.  Mr. Shy, you signed your

7    Rule 11 Agreement on April 29, 2016, correct?  Do you remember doing that?

8          MR. SHY:  Yes, I did.

9          THE COURT: In the 24 hours before you signed it, did you take any

10   prescription medicine?

11         MR. SHY:  Yes, Your Honor.  I take cholesterol medicine.

12         THE COURT:  That's it?

13         MR. SHY:  Yes.

14         THE COURT:  Did you have any -- in that same 24-hour period, did you

15   have any illegal drug?

16         MR. SHY:  No.

17         THE COURT: Any alcohol?

18         MR.  SHY:  No.

19         THE COURT: And in the last 24 hours, same questions.

20         MR. SHY:  No, Your Honor.

21         THE COURT:  Do you have any difficulty reading English, Mr. Shy?

22         MR. SHY:  No.

23         THE COURT: Any difficulty writing English?

24         MR. SHY:  My wife says I do, but  --

25         THE COURT: Are you a citizen of the United States?

1        MR.  SHY:  I am.

2        THE COURT: Have you ever treated for any kind of mental health issue,

3  Mr. Shy?

4        MR. SHY:  No.

5        THE COURT: And do you feel competent today to enter these guilty

6  pleas?

7        MR. SHY:  I do, Your Honor.

8        THE COURT: The Information was filed against you by the Government

9  on March 29 of this year.  When did Mr. Andreoff become your lawyer?

10        MR. SHY:  April 4th.

11        THE COURT: And since April 4th-- from April 4th until now, have you

12  had an opportunity to talk about these charges against you with Mr. Andreoff?

13        MR.  SHY:  Yes.

14        THE COURT: A number of times probably?

15        MR. SHY:  Yes, Your Honor.

16        THE COURT: And did you read the Rule 11 Agreement yourself?

17        MR. SHY:  Yes.

18        THE COURT: And did you go over it with Mr. Andreoff?

19        MR. SHY:  Yes.

20        THE COURT: And did you fully understand that Rule 11 Agreement

21  before you put your signature on it?

22        MR.  SHY:  I did.

23        THE COURT: And do you have any complaints about Mr. Andreoff's

24  representation of you?

25        MR. SHY:  No.

1     THE COURT: You believe you have been given good legal

2  representation up until this point?

3     MR. SHY:  I do.

4     THE COURT:  Mr. Shy, I want to now go over your Constitutional rights

5  that will be affected if this Court does accept your plea of guilty, and the first one is

6  your right to remain silent.  What that means is that you don't have an obligation to

7  speak here today.  You can remain silent.  You can require the Government to prove

8  that you are guilty.  Do you understand that you will give testimony under oath and

9  that you will give up that right to remain silent?

10     MR.  SHY:  Yes.

11     THE COURT: On the other hand, if you weren't pleading guilty today we

12  would go forward and have a trial and you would have a Constitutional right to either

13  testify or not testify at your trial.  Do you understand you're giving that up?

14     MR. SHY: Yes.

15     THE COURT: You would also have a right to counsel and a right to have

16  counsel appointed to represent you at that trial if you could not afford a lawyer.  Do

17  you understand you are giving up your right to trial counsel today?

18     MR. SHY:  Yes.

19     THE COURT: The trial could be by a jury if you made that election.  You

20  have that Constitutional right as well and you could assist Mr. Andreoff in choosing 12

21  people.  They would listen to all of the evidence in this case and they could decide

22  that you are not guilty.  So do you understand you are giving up your Constitutional

23  right to have a jury decide whether you are guilty or innocent?

24     MR. SHY:  Yes, I do.

25     THE COURT: You also have a presumption of innocence, Mr. Shy.

1    That means that if a jury were impaneled in this case, it would be told that the

2    Information or Indictment against you is not evidence of guilt.  It is the way the

3    Government let's citizens know that they face criminal charges, and the jury would be

4    told they could not presume that you are guilty, but that you are -- they are to

5    presume that you are innocent.  Do you understand you're giving up your presumption

6    of innocence today?

7              MR. SHY:  I do.

8              THE COURT: There is a burden of proof that is on the Government in all

9    criminal cases.  It doesn't matter who the Defendant is.  It doesn't matter what the

10   charge is and that burden is to prove guilt beyond a reasonable doubt.  The

11   Government will no longer have that responsibility today because you've said you

12   want to plead guilty.  Is that something you want to do?

13             MR. SHY:  Yes.

14             THE COURT: You also have rights, Mr. Shy, with respect to witnesses.

15   The Government would call witnesses against you.  Mr. Andreoff would be able to

16   cross-examine those witnesses.  You then would have the right to call your own

17   witnesses and if anyone wasn't willing to come to court, they could be subpoenaed to

18   come in, take the witness stand.  The jury could hear this.  A jury could decide based

19   on the testimony of witnesses that you are not guilty.  So do you understand you're

20   giving up all of your rights with respect to witnesses by pleading guilty today?

21             MR. SHY:  I do.

22             THE COURT: Once this Court accepts your plea of guilty, Mr. Shy, you

23   will be convicted of a felony and that affects other rights that you have.  You will not

24   be able to have anything to do with a dangerous weapon, particularly a firearm.  Your

25   right to vote in Michigan may be affected for any period of time that you are in prison

1    once this Court sentences you.  Your right to serve on a jury may be effected and

2    there are other rights as well.  This Court does not have a laundry list of them.  Not

3    knowing what they all are, are you still prepared to plead guilty today?

4              MR.  SHY:  I am, Your Honor.

5              THE COURT: You know in your Rule 11 Plea Agreement there is an

6    Appellate Waiver Provision and that means that if this Court -- once this Court accepts

7    your plea of guilty, you will not be able to withdraw it unless a circumstance develops

8    that I will describe later.  You will not be able to appeal your sentence if this Court

9    sentences you within the Guideline range that is set forth in the Rule 11 Plea

10   Agreement.  Do you understand that?

11             MR. SHY:  I do.

12             THE COURT: And you still want to plead guilty?

13             MR. SHY:  Yes, Your Honor.

14             THE COURT: Thank you.  Mr. Buckley, would you tell us about the

15   statutory penalties?

16             MR. BUCKLEY:  Yes, Your Honor.  With regard to Count One,

17   Conspiracy to Commit Federal Program Bribery, the maximum statutory penalty of

18   incarceration is five years.  The maximum penalty is $250,000. (sic)

19             With regard to Count Two, Your Honor, Federal Income Tax Evasion, the

20   statutory maximum penalty incarceration, five years and a fine of maximum a hundred

21   thousand dollars together with the cost of prosecution.

22             THE COURT:  Thank you.  Mr. Shy, do you understand all of those

23   penalties?

24             MR. SHY:  I do.

25             THE COURT: And do you understand the Court can impose other

1   penalties on you as well such as Special Assessments, the cost of prison, the cost of

2   probation or the cost of supervised release?

3          MR. SHY:  Yes.

4          THE COURT: And do you understand that as part of this Rule 11

5   Agreement you will be ordered to make restitution?

6          MR. SHY:  Yes.

7          THE COURT: And do you understand also that you are going to be

8   forfeiting substantial interest in property?

9          MR. SHY:  I do.

10         THE COURT: Mr. Shy, I need to ask you questions now about your

11  criminal record.  Before today have you been convicted of a crime?

12         MR. SHY:  Never.

13         THE COURT: And other than the charges pending against you in this

14  Court, do you have any criminal charges pending against you anywhere else in the

15  United States?

16         MR. SHY:  No.

17         THE COURT: Counsel, could you go over the Rule 11 Plea Agreement

18  please?

19         MR. BUCKLEY:  Certainly, Your Honor.  It's my understanding that

20  today Mr. Shy will tender guilty pleas to Count One, Conspiracy to Commit Federal

21  Program Bribery in violation of 18 U.S.C.  Sections 371 and 666 and Federal Income

22  Tax Evasion, Count Two, Title 26 U.S.C. Section 7201.

23         Your Honor, with regard to the Sentencing Guidelines the parties have had

24  them calculated under the Sentencing Guidelines and agree that the Sentencing

25  Guideline range is 70 to 87 months.

1    The parties agree that the Court will impose an Order of Restitution to the

2  Detroit Public Schools in the amount of $2,768,846.93.  And further, that the

3  Defendant will pay the Internal Revenue Service back taxes of $51,667 for the taxable

4  year 2011.

5    Pursuant to the Rule 11, Mr. Shy will also pay a Special Assessment of $200

6  representing $l00 for each Count.

7    There is a Forfeiture Provision, Your Honor, and it's my understanding that at

8  the appropriate time Mr. Shy will enter into a stipulated Order of Forfeiture.

9    Furthermore, Your Honor, Mr. Shy has agreed that he and his spouse will

10  execute an IRS Form 870 which encompasses tax years 2009 through 2013.  I will

11  state for the record, Your Honor, that yesterday's date Mr. Shy and his spouse

12  executed the Form 870 and provided it to the United States.

13    Mr. Shy also agrees, Your Honor, pursuant to the Rule 11 that he will

14  cooperate with the Internal Revenue Service in determination of his income tax

15  liability for the tax year 2011.  My understanding is he's done that as well and has

16  tendered to the Government yesterday's date a check encompassing all back taxes,

17  penalties and interest for the taxable year 2011.

18    The parties have agreed that if the Court accepts this Agreement, the

19  Government will not bring additional charges against Mr. Shy based on any of the

20  conduct reflected in the attached work sheets.

21    Lastly, Your Honor, the Rule 11 does contain an appeal waiver.  Mr. Shy

22  waives any right he may have to appeal his conviction on any grounds.  If Mr. Shy's

23  sentence does not exceed 87 months, he also waives any right he may have to

24  appeal the  sentence.  The Government agrees likewise, Your Honor, that if the

25  sentence of imprisonment is at least 70 months, the Government waives any right it

1    may have to appeal Mr. Shy's sentence.

2         Your Honor, those are the salient provisions of the Rule 11 Plea Agreement.

3         THE COURT: Thank you very much, Mr. Buckley.  Mr. Shy, did Mr.

4    Buckley accurately describe the Rule 11 Agreement that you signed?

5         MR. SHY:  Yes.

6         THE COURT: And other than what is in the Rule 11 Agreement, has

7    anybody made any promise to get you to plead guilty?

8         MR. SHY:  No, Your Honor.

9         THE COURT:  Or any other promise?

10        MR. SHY:  No.

11        THE COURT: Has anybody threatened you in any way in order to get

12   you to plead guilty?

13        MR. SHY:  No, Your Honor.

14        THE COURT: So first, how do you plead to Count One, 18 U.S.C. 371

15   and 666 violation, Conspiracy to Commit Federal Program Bribery?

16        MR. ANDREOFF:  Your Honor, before we proceed, just for the record

17   the Court has before it the Waiver of Indictment.

18        THE COURT: Yes.

19        MR. ANDREOFF:  I just wanted the record to reflect that we went

20   through the Waiver of Indictment form before the United States Magistrate Executive

21   Judge Steven Whalen.  I don't know if the Court needs to go through the Waiver of

22   Information form that we entered and executed, and also I wanted to acknowledge for

23   the record the Acknowledgment of Constitutional Rights which we tendered to the

24   Court.  I didn't mean to interrupt the Court, but I don't know if you wanted to go

25   through the Waiver of Indictment process again.

1          THE COURT:  Okay.  I do have a signed Acknowledgment of Advice as

2     to Constitutional Rights, the signed Acknowledgment of Information and signed

3     Waiver of Indictment and for the record, Mr. Shy, you signed these documents today?

4          MR. SHY:  Yes, I did.

5          THE COURT: And you -- Mr. Andreoff explained to you that you had a

6     right to have a Grand Jury convened and to consider all of the evidence that the

7     Government has against you?

8          MR.  SHY:  Yes.

9          THE COURT: And you waived that by signing this Waiver of Indictment?

10          MR. SHY:  Yes.

11          THE COURT: And that means that you are prepared to proceed on the

12     Information only that the Government filed against you?

13          MR. SHY:  Yes.

14          THE COURT: So how do you plead then to Count One, Conspiracy to

15     Commit Federal Program Bribery?

16          MR. SHY:  I plead guilty, Your Honor.

17          THE COURT: And would you explain to us what you did, Mr. Shy?

18          MR. SHY:  I'm sorry?

19          THE COURT: Would you explain to us what you did?

20          MR. SHY:  Yes.  Between 2009 and 2013 I operated a business called

21     Allstate Sales which provided supplies to the Detroit Schools.  I conspired with school

22     officials as stated in Rule 11 and did not deliver or fully deliver items that were listed

23     on purchase orders which were fraudulent.  I paid school officials monies and other

24     things of value for their assistance.

25          THE COURT: Okay.  So let me just fill in some of the blanks.  You said

1  before that you were the owner of this Allstate Sales and that it was in the business of

2  providing educational supplies?

3                MR.  SHY:  Yes.

4                THE COURT: And were you on an approved list of -- lists to provide

5  supplies to Detroit Public Schools?

6                MR. SHY:  I was.

7                THE COURT: And because you were on that list, did you develop

8  relationships with Principals of certain DPS schools?

9                MR. SHY:  I did.

10               THE COURT: And those Principals were the ones who could select you

11 as a vendor to supply to their schools?

12               MR. SHY:  Yes.

13               THE COURT: And was one of these Principals Clara Flowers?

14               MR. SHY:  She was.

15               THE COURT: And she was a Principal at Henderson School?

16               MR. SHY:  Yes.

17               THE COURT: And also at some point she became the Assistant

18 Superintendent of DPS for the Office of Specialized Student Services?

19               MR. SHY:  Yes.

20               THE COURT: And she selected you as a vendor in both of those

21 positions that she had with the DPS?

22               MR. SHY:  She did.

23               THE COURT: Were some of the supplies that she contracted with you

24 for never delivered to her schools?

25               MR. SHY:  Yes.

1          THE COURT: And nonetheless you billed DPS for more supplies than

2    the schools obtained?

3          MR. SHY:  Yes.

4          THE COURT: And you said also that these Principals, you conspired

5    with them and you did not fully deliver.  Did Miss Flowers submit fraudulent invoices

6    so that you could be paid over and above what you did supply?

7          MR.  SHY:  Yes.

8          THE COURT: In exchange for the fraudulent invoices that she

9    submitted, did you agree to give her part of the money that you received?

10          MR. SHY:  Yes.

11          THE COURT: And did you get paid, Mr. Shy, $324,785?

12          MR. ANDREOFF:  Miss Flowers -- I think Miss Flowers did.

13          THE COURT: Oh, I'm sorry.  Yes, Miss Flowers did. You paid her a total

14    of $324,785 in exchange for her fraudulent submissions?

15          MR. SHY:  Yes.

16          THE COURT: And did you pay her in the form of gift cards?

17          MR. SHY:  Partially.

18          THE COURT: And paid her travel agency?

19          MR. SHY:  I did.

20          THE COURT: Did you make checks to contractors who did work for her

21    at her home?

22          MR. SHY:  I did.

23          THE COURT: And I think you said that this was for the period 2009 to

24    2013, although I think the Information said 2009 to January of 2015.  Would that be

25    more accurate?

1          MR. SHY:   I don't believe so, Your Honor.

2          THE COURT: Is there a mistake in the Information, Mr. Buckley or

3    maybe you can clarify that -- or not now.  Let me finish my questions first.

4          And you testified at the outset that you conspired with other school officials and

5    that would have been people beyond Miss Flowers?

6          MR. SHY:  Other Principals, Your Honor.

7          THE COURT: And these other Principals selected you as vendors for

8    their school and they submitted fraudulent invoices on your behalf as well?

9          MR. SHY: Yes.

10          THE COURT: I just want to go through the list of people who would be

11   on that list, the other Principals beyond Miss Flowers.  Clara Smith?

12          MR. SHY:  Yes.

13          THE COURT: Stanley Johnson?

14          MR. SHY:  Yes.

15          THE COURT:  Ronnie Sims?

16          MR. SHY: Yes.

17          THE COURT:  Willie Pearsall?

18          MR. SHY: Yes.

19          THE COURT: Beverly Campbell?

20          MR. SHY: Yes.

21          THE COURT: Josette Lindea (phonetic).

22          MR. SHY: Yes.

23          THE COURT: Nina Graves Hicks.

24          MR. SHY: Yes.

25          THE COURT: Ronald Alexander.

1          MR. SHY:  Yes.

2          THE COURT: Germala (phonetic) Johnson?

3          MR.  SHY:  Yes.

4          THE COURT: Tonya Bowman?

5          MR.  SHY:  Yes.

6          THE COURT: James Hearns.

7          MR. SHY:  Yes.

8          THE COURT:  Teavon (phonetic) Moore Patton?

9          MR. SHY:  Yes.

10          THE COURT: And were there any others?

11          MR. SHY:  Not that I can think of, Your Honor.

12          THE COURT:   And did these agreements that you had with all these

13    Principals allow you to obtain more than 2.7 million dollars for goods that you never

14    delivered?

15          MR. SHY:  Yes.

16          THE COURT: Let me just move on to my questions on the Federal

17    Income Tax Evasion, then I'll turn it over to Mr. Buckley.  How do you plead on

18    Federal Income Tax Evasion in violation of 26 U.S.C. 7201?

19          MR. SHY:  Guilty.

20          THE COURT: And the scheme that you -- schemes that you described

21    earlier, Mr. Shy, did they result in you receiving income that you did not report to the

22    IRS?

23          MR. SHY:  Yes.

24          THE COURT: Did you willfully fail to report that income?

25          MR.  SHY:  Yes.

1           THE COURT: And do you agree that you underpaid and you owed to

2   the IRS $51,667?

3           MR. SHY: Yes, I did.

4           THE COURT: Do you have questions, Mr. Buckley?

5           MR. BUCKLEY: Thank you, Your Honor. I'm very satisfied with the

6   Court's questions pertaining to the factual basis. I just have a few questions. May I

7   question Mr. Shy directly?

8           THE COURT: You may.

9           MR. BUCKLEY: Mr. Shy, in your dealings with Detroit Public Schools

10  you were aware that in any 12-month period the DPS received in excess of $10,000 in

11  Federal funding?

12          MR. SHY: Yes.

13          MR. BUCKLEY: And the transactions or series of transactions which

14  you were involved with Miss Flowers had a value of $5000 or more, is that also

15  correct?

16          MR. SHY: Yes.

17          MR. BUCKLEY: And then Judge Roberts asked you a number of

18  Principals' names. That list was not exhaustive. There were others, were there not?

19          MR. SHY: There may have been. I can't think of any others at this time.

20          MR. BUCKLEY: I apologize, Your Honor, if the Court mentioned. Mr.

21  Ron Alexander was one of them?

22          MR. SHY: She mentioned that one, yes.

23          MR. BUCKLEY: Judge, that's all the questions I have.

24          THE COURT: Do you want any -- do you want to try to clarify those

25  dates?

1          MR. BUCKLEY:  Your Honor, I don't know that it's critical that we do so.

2   It's our position that it's not a mistake.  I believe Mr. Andreoff's position is that the last

3   invoices were submitted some time in 2014 and were not paid by DPS.  Is that

4   correct, Mr. Andreoff?

5          MR. ANDREOFF:  Yes.

6          MR. BUCKLEY:  Judge, it's not fatal to these proceedings.

7          THE COURT: I just recall that Miss Flowers testified she was involved

8   from February of  '09 until January of 2015.

9          MR. BUCKLEY:  Judge, I think it's fair to say that the conspiracy

10  continued.  I think Mr. Shy is drawing a distinction between the time the invoices were

11  submitted and honored by DPS.

12         THE COURT: So you're satisfied with his plea colloquy?

13         MR. BUCKLEY:  Yes, Your Honor.  Thank you.

14         THE COURT: And are you, Mr. Andreoff?

15         MR. ANDREOFF:  Yes, Your Honor.  I wanted to add one other thing at

16  the appropriate time.

17         THE COURT: Does it have to do with his factual basis?

18         MR. ANDREOFF:  No, it does not.

19         THE COURT: We'll take it up then.  The Court is satisfied that Mr. Shy

20  has established a factual basis for Counts One and Two of the Information that the

21  Government issued against him.  The Court believes that Mr. Shy is competent to

22  enter this guilty plea, that he understands all of the rights that he is losing and that

23  other than what is in the Rule 11 Plea Agreement, that no one is forcing him to enter

24  into this plea -- these pleas.

25         For all of those reasons, Mr.  Shy, the Court does accept your guilty pleas.

1   You are going with Mr. Andreoff to our Probation Department. It's going to prepare a

2   Presentence Investigation Report and that report is going to have background

3   information about you, about all of these conspiracies that you involved yourself in

4   and it's very important that you cooperate in its preparation. The Court is going to use

5   that to help decide what your sentence should be, so it's important that you

6   cooperate. Once it's done, Mr. Andreoff will get it. He will give you a copy. He'll go

7   over it with you and you need to let him know if there's anything in it that should be

8   changed or modified before the Court imposes sentence.

9          Once I look at that report, if I am satisfied that this is a reasonable Plea

10  Agreement that you've entered into with the Government, I will accept your Plea

11  Agreement as well. If I don't believe it's reasonable, you will be allowed to withdraw

12  your guilty plea. You will be allowed to go forward and have a trial and exercise all of

13  the rights that we spoke of this afternoon. Do you have any questions about what

14  we've done?

15          MR. SHY: I do not, Your Honor.

16          THE COURT: Thank you. We have a date for your sentencing.

17          THE CLERK OF THE COURT: September 6th, 2016 at 10 a.m.

18          MR. ANDREOFF: Your Honor, is it possible to have that date later? I

19  have a trial scheduled the end of August that's going to go the first two to maybe three

20  weeks of September. Is it possible to make it two weeks previous thereafter?

21          THE COURT: You know I would prefer not, Mr. Andreoff. Who's your

22  trial in front of?

23          MR. ANDREOFF: It's Oakland County Circuit Court, Your Honor. I can

24  --

25          THE COURT: (Interjecting) Why don't you --

1    MR. ANDREOFF:  (Interjecting)  I can deal with it later if the Court
2    wishes.
3    THE COURT: I would prefer that, and then maybe I can have a
4    conversation with your Trial Judge.  I do want to keep these sentences together and
5    get them done within --
6    MR.  ANDREOFF:  What time on the 6th, Your Honor?
7    THE COURT:  At  10 a.m. on September 6th.
8    MR. ANDREOFF:  When do you want your Sentencing Memorandum
9    usually, Your Honor,  two weeks before?
10    THE COURT: August 18th.  Counsel, are you satisfied the Court has
11    complied with all the rules in considering and accepting these guilty pleas?
12    MR. BUCKLEY:  Yes.  Thank you, Your Honor.
13    THE COURT: Thank you.  Mr. Andreoff?
14    MR. ANDREOFF:  I am, Your Honor, except I wanted to make one
15    statement for the record.
16    THE COURT: Yes.
17    MR. ANDREOFF:  Your Honor, if the Court will look at page 14 and the
18    top of page 15, I wanted to explain to the Court so the Court understands.  This
19    particular IRS Form 870 was in fact executed yesterday, May 10th, and was
20    submitted personally to the Internal Revenue Service.  It also encompasses other tax
21    years and the tax was in fact paid as reflected, the $51,667 plus penalties and
22    interest.  That was also tendered to both the Revenue and the CID agent in charge of
23    the case.  So I wanted the Court to know that; that that issue is a nonissue vis-a-vis
24    for your prospective sentencing purposes.
25    THE COURT: All right.  Thank you.  Anything more?

1          MR. ANDREOFF:  Nothing further, Your Honor.

2          THE COURT: And you, Mr. Buckley?

3          MR. BUCKLEY:  No thank you, Your Honor.

4          THE COURT: We're adjourned.  Thank you.

5              **(Proceedings adjourned at about 2:31 p.m.)**

6                          - - -

7              **COURT REPORTER'S CERTIFICATION**

8    STATE OF MICHIGAN)

9                    )  SS.

10   COUNTY OF WAYNE  )

11       I, Janice Coleman, Federal Official Court Reporter, in and

12   for the United States District Court for the Eastern District

13   of Michigan, do hereby certify that pursuant to Section 753,

14   Title 28, United States Code, that the foregoing is a true and

15   correct transcript of the stenographically reported proceedings

16   held in this matter and that the transcript page format is in

17   conformance with the regulations of the Judicial Conference of

18   the United States.

19                      /S/ JANICE COLEMAN

20                      JANICE COLEMAN, CSR NO. 1095, RPR

21                      FEDERAL OFFICIAL COURT REPORTER

22   DATED:  June 10, 2016

23

24

25