UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,            CRIMINAL NO. 16-cr-20218-01

    Plaintiff,            HON. VICTORIA A. ROBERTS

v.

D-1 NORMAN SHY,

    Defendant.

_____/

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorneys, Barbara L. McQuade, United States Attorney, and J. Michael Buckley and Frances Lee Carlson, Assistant United States Attorneys, submits that for the reasons provided below, a sentence of 70-87 months' imprisonment is sufficient but not greater than necessary to achieve the purposes set forth in 18 U.S.C. § 3553(a)(2).

**I.     INTRODUCTION**

President John F. Kennedy once said: "Let us *think of education as the means of developing our greatest abilities*, because in each of us there is a private hope and dream which, fulfilled, can be translated into benefit for everyone and greater strength for our nation." (Emphasis added). Defendant Norman Shy's greatest sin was depriving Detroit schoolchildren, for years, of the opportunity to

1

develop their greatest abilities, thereby robbing society of numerous future potential doctors, lawyers, scientists, teachers. Shy stole over $2.7 million, which could have been used to help Detroit kids develop their greatest abilities, by paying for books, laptops, supplemental teaching materials, field trips, and salaries for additional teachers. The true loss in this case is far beyond financial loss, and it is incalculable.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Plea

On May 11, 2016, the defendant pled guilty pursuant to a plea agreement to one count of conspiracy to commit federal program bribery, in violation of 18 U.S.C. §§ 371 and 666(a)(1)(B), and one count of federal income tax evasion, in violation of 26 U.S.C. § 7201. Shy's guilty pleas arose from his participation in a scheme to (as an approved DPS vendor) make illegal kickback payments to DPS principals in return for their selection of Shy as their respective school supplies vendor. The plea agreement recommended the guideline range to be 70-87 months, based on a total offense level 27 and a criminal history category I.

The parties agreed that Shy owes DPS $2,768,846.93 in restitution as a result of the fraud in which he conspired to engage. Shy has paid all back taxes, fines, penalties and interest pertaining to Count Two, federal income tax evasion.

**B.     Facts**

Norman Shy, doing business as Allstate Sales, Ronan Enterprises, and R.S. Associates, was a pre-approved DPS vendor of school supplies. Sometime prior to February 2009, Shy was selected as a vendor for school supplies for various DPS schools.

At some point, Shy conspired with select DPS principals to submit purchase orders which included goods that they knew were not going to be delivered to the school and also to have those principals knowingly certify fraudulent invoices which sought payment for undelivered goods. Shy's scheme caused DPS to issue payments to Shy for undelivered goods. In exchange, Shy would extend a "credit" to his co-conspirator principals which Shy based on a percentage of the fraudulently-obtained payment Shy received from DPS for undelivered goods. This process was referred to by Shy and the principals as "encumbering funds."

The co-conspirator principals regularly withdrew from their "credit" of encumbered funds with Shy, usually by requesting and accepting prepaid gift cards to use as they wished. In order to make his kickback payments appear legitimate, Shy requested that the principals provide him with letters (on school letterhead) requesting gift cards on behalf of their respective DPS schools, which they willingly did.

As part of the scheme, principals who had the discretion to select vendors to procure services and supplies for their respective schools certified, or caused to be certified, that all goods and services were received by their school, which in turn, would cause DPS to issue payment to the vendor Shy.

This scheme to defraud involving encumbered funds was Shy's brainchild. Shy devised the system and suggested it to select DPS principals. The scheme was very clever and its implementation required some considerable forethought.

Between 2009 and 2015, Shy corruptly received from DPS $2.768,846.93 for undelivered goods, and paid countless kickbacks totaling $908,000.00 during that same timeframe. Records obtained relating to gift cards Shy provided to the principals reveal myriad purchases for personal gain made at various stores, hotels and restaurants.

To conceal the scheme, Shy made some kickback payments to co-conspirators' family members or to co-conspirators' businesses or consulting companies; Shy paid for home improvements for one co-conspirator. It cannot be seriously argued that he believed such purchases and expenditures were "for the kids."

## III. SENTENCING GUIDELINE CALCULATIONS

As reflected in the plea agreement, the parties anticipated a guideline range of 70-87 months based on a total offense level of 27. The probation department

used a different formula than the parties, but calculated the same guideline range of 70-87 months.

## IV. SECTION 3553(a) SENTENCING FACTORS

In determining the appropriate sentence, the Court should not simply rely on the Guideline calculations, but should consider all of the factors in the Sentencing Reform Act and, in particular, those set forth in 18 U.S.C. § 3553(a). These factors include (i) the nature and circumstances of the offense, and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, and (iii) the need for the sentence imposed to afford adequate deterrence to criminal conduct.

In this case, a guideline sentence is warranted.

### A.     Nature and Circumstances of the Offense

The gravity of the fraud that Shy perpetrated upon DPS, the taxpayers and, most importantly, upon the children of Detroit, cannot be overstated. The struggles of DPS have been well-documented in the media: deplorable building conditions; teacher shortages; severe lack of school supplies and equipment; overcrowded classrooms; lack of funding.

Any extent to which Shy characterizes his motives as altruistic- that he fraudulently paid kickbacks to principals "for the kids" - is irrelevant. Although the

Sixth Circuit has not directly addressed this issue, other federal circuits which have had the opportunity to do so have resoundingly declined to consider personal profit motives—or lack thereof—when imposing sentences. *United States v. Seacott*, 15 F.3d 1380, 1386 (7th Cir. 1994); *United States v. Corry*, 206 F.3d 748, 749 (7th Cir. 2000); *United States v. Kopp*, 951 F.2d 521, 535-36 (3d Cir. 1991); *United States v. Felder*, 225 F. App'x 423, 424 (8th Cir. 2007).

Accordingly, although a sentencing court can consider most any factor when considering a downward departure or variance, the federal circuits have made clear that a defendant's claimed "good" motive in a such crime should not be grounds for leniency. Instead, courts should focus on the victims of the crime, and not upon alleged benefactors of the crime.

Even if Shy had paid fraudulent kickbacks believing that some of the illegal proceeds were used by the principals to help the individual schools, his alleged charity was only made possible by fraud committed against taxpayers, the students, and the Detroit Public School System. Shy's fraud deprived DPS students, collectively, of over $2.7 Million which could have been spent on education.

    **B.**    <u>**History and Characteristics of Defendant Shy**</u>

Shy has no criminal history. The PSR provides a detailed account of Shy's personal background.

### C. Seriousness of the Offense, Promoting Respect for the Law, Providing Just Punishment, and Affording Adequate Deterrence

Shy's crime of corrupt payment of kickbacks was not the result of a single bad decision, a momentary impulse, or an isolated exercise of poor judgment. He devised and implemented his "encumbered funds" system and, over the course of years, paid countless kickbacks to DPS principals in the form of prepaid gift cards (sometimes in amounts ranging from $500 to $3,000 per kickback), checks, cash, and home improvements. Shy's conduct was not spontaneous, but, instead, involved careful premeditation and planning, and repeated acts of deceit over a period of years. It is also important to note that the encumbered funds kickback scheme was Shy's brainchild; he devised the scheme.

In prosecutions such as Shy's, the sentence imposed is important to promote respect for the law. Congress enacted 18 U.S.C. § 666 to "protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery." S. Rep. No. 98-225, p. 370 (1983). The sentence imposed should reflect this purpose. Shy was an approved DPS vendor, and was entrusted to serve the DPS honestly, with the best interests of the students and schools in mind.

The spectacle of a school vendor corruptly scheming with principals to manipulate the system for their own enrichment does untold damage to the public

trust and the faith of our citizens in the education system provided for their children. Undoubtedly, many members of the community are wondering how pervasive this type of corruption is in our educational system.

Given the difficulties of uncovering and prosecuting this type of corruption, the deterrent impact of a prison sentence is also important. The Eleventh Circuit emphasized the important role that prison sentences have in deterring economic-based crimes in *United States v. Martin* when it recognized that "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." 455 F.3d 1227, 1240 (11th Cir. 2006) (internal citations omitted). It is especially important to send a message that this type of conduct cannot be tolerated, will not be tolerated, and will result in severe penalties, in a public corruption case.

"Let us *think of education as the means of developing our greatest abilities*, because in each of us there is a private hope and dream which, fulfilled, can be translated into benefit for everyone and greater strength for our nation." President John F. Kennedy, Jr. (Emphasis added). Shy's greatest sin was depriving Detroit schoolchildren, for years, of the opportunity to develop their greatest abilities, thereby robbing society of countless future doctors, lawyers, scientists, teachers.

Shy stole over $2.7 million, which could have been used to help Detroit kids develop their greatest abilities, by paying for books, laptops, supplemental teaching materials, field trips, and salaries for additional teachers. The true loss in this case is far beyond financial loss, and it is incalculable.

In closing, Shy offers the court many letters in support of his request for leniency; the Government is simply incapable of offering letters from the thousands of Detroit schoolchildren whose chances for a future were stolen by Shy.

## **CONCLUSION**

For all of the above reasons, a sentence of imprisonment within the range of 70 – 87 months, is appropriate and necessary. Such a sentence would serve to adequately punish the defendant for his actions. In addition, this sentence would promote respect for the law and serve as deterrence for others.

The government further requests that the Court order full restitution, as agreed to by the parties in the plea agreement, in the amount of $2.768,846.93 to Detroit Public Schools.

9

        Respectfully submitted,

        BARBARA L. MCQUADE
        United States Attorney

        *s/J. Michael Buckley*
        J. MICHAEL BUCKLEY
        FRANCES LEE CARLSON
        Assistant United States Attorneys
        211 West Fort Street, Suite 2001
        Detroit, Michigan 48226
        313-226-9100
        michael.buckley@usdoj.gov
        frances.carlson@usdoj.gov

Dated: August 23, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2016, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

        Christopher Andreoff
        Attorney for Defendant, Norman Shy

        *s/J. Michael Buckley*
        J. MICHAEL BUCKLEY
        Assistant United States Attorney

Dated: August 23, 2016