1                    UNITED STATES DISTRICT COURT

2                 FOR THE EASTERN DISTRICT OF MICHIGAN

3                          SOUTHERN DIVISION

4

5    UNITED STATES OF AMERICA,

6                   Plaintiff,              Case No.  16-20218

7         -vs-

8                                           Detroit, Michigan

9    NORMAN SHY,                            September 6, 2016

10                  Defendant.

11   ----------------------------/

12                  TRANSCRIPT OF SENTENCE HEARING

13            BEFORE THE HONORABLE VICTORIA A. ROBERTS

14             UNITED STATES DISTRICT COURT JUDGE

15

16   APPEARANCES:

17   For the Government:         J.Michael Buckley
                                 Frances Carlson
18                               Paul Kuebler
                                 Assistant U.S. Attorneys
19                               211 W. Fort Street,  Ste 2001
                                 Detroit,  Michigan 48226
20

21   For the Defendant:          Christopher A. Andreoff
                                 Jaffe, Raitt
22                               27777 Franklin Road,  Ste 2500
                                 Southfield, Michigan 48034-8214
23

24

     **Proceedings taken by mechanical stenography, transcript produced by**
25   **computer-aided transcription**

 1                    Detroit, Michigan

 2                 Tuesday, September 6, 2016

 3                   (At about 10:36 a.m.)

 4                         -  -  -

 5                (Call to Order of the Court)

 6          THE CLERK OF THE COURT: The Court calls the case of United

 7   States of America versus Norman Shy, case number 16-20218-1.  Counsel, please

 8   state your appearances for the record.

 9          MR. BUCKLEY:  Good morning. May it please the Court, Michael

10   Buckley appearing on behalf of the United States.

11          THE COURT: Good morning.

12          MS. CARLSON:  Good morning, Your Honor. Francis Carlson appearing

13   on behalf of the United States.

14          THE COURT:  Good morning.

15          MR. KUEBLER:  Good morning, Your Honor.  Paul Kuebler, forfeiture

16   counsel appearing for the United States.

17          THE COURT:  Thank you.  Good morning.

18          MR. ANDREOFF:  Your Honor, Christopher Andreoff appearing on

19   behalf of Norman Shy, who is present.

20          THE COURT: Thank you.  This is the time the Court has set to consider

21   Mr. Shy's sentence.  He did plead guilty to two Counts in the Indictment the

22   Government issued against him, Conspiracy to Commit Federal Program Bribery and

23   Federal Income Tax Evasion.

24          The Court does have a Presentence Investigation Report that was prepared by

25   Lara Catrell.  She can't be here today and in her place is Julie Grewe.

1      So let me first take up the Presentence Investigation Report.  I believe that

2  there were no objections filed to the Report is that true, Counsel?

3          MR. BUCKLEY:  That's correct, Your Honor.

4          THE COURT: Mr. Andreoff?

5          MR. ANDREOFF:  Yes, Your Honor.

6          THE COURT:  Thank you.  Mr. Shy, good morning.

7          MR. SHY:  Good morning, Your Honor.

8          THE COURT: Mr. Shy, did you read the Presentence Investigation

9  Report?

10          MR. SHY:  Yes, I did.

11          THE COURT: And did you go over it with Mr. Andreoff?

12          MR. SHY:  Yes, I did.

13          THE COURT: And is it correct then that you don't have any objections to

14  it?

15          MR. SHY:  That is correct, Your Honor.

16          THE COURT: Thank you.  So everyone is in agreement that the Offense

17  Level here is 27, the Criminal History Category is One and the Guideline range that

18  the Court must take into account for purposes of sentencing Mr. Shy is 70 to 87

19  months.

20      In addition to the Presentence Investigation Report, the Court has Sentencing

21  Memorandum filed by the Government.  I also have a Sentencing Memorandum filed

22  by the Defense, which has a number of letters attached to it, and Mr. Andreoff, were

23  there separate letters that were not attached to the Sentencing Memorandum?

24          MR. ANDREOFF:  Your Honor, those were filed with the Court.  Those

25  were the character letters.  There were approximately 42 character letters sent to the

1      Court by way of the ECF system.  Hopefully the Court has that --

2              THE COURT:  (Interjecting) No, no.  What I was asking you is were

3      there letters -- there were attachments that were separate from your --

4              MR. ANDREOFF:  -- Sentencing Memorandum, that is correct.  Those

5      were submitted after discussing the matter with your Case Manager.

6              THE COURT: And the Court does have and read the approximately 43

7      letters that were sent in on behalf of Mr. Shy.

8              MR. ANDREOFF:  Thank you, Your Honor.

9              THE COURT: I will hear first from the Government.  Who is going to

10     argue?

11             MR. BUCKLEY:  I am, Your Honor.

12             THE COURT: All right.  Mr. Buckley, take the podium  please.

13             MR. BUCKLEY:  Thank you, Your Honor, and may it please the Court.

14     Your Honor, this is a fraud case and as the Court is well aware, in fraud cases the

15     Sentencing Guidelines dictate that financial loss should be the standard for

16     determining loss and imposing a penalty, but I respectfully submit to this Court that

17     even in light of the fact that Mr. Shy took 2.7 million dollars from a struggling school

18     district, the loss in this case is far beyond financial and quite frankly, Your Honor, it's

19     incalculable.

20         This case reminded me of a quote by President John F. Kennedy, Jr., your

21     Honor, and President Kennedy said:  Let us think of education as a means of

22     developing our greatest abilities, because in each one of us is a private hope, a

23     dream, which fulfilled, translates into benefit for all of us and greater strength for our

24     nation.  I think what President Kennedy was driving at was that provided the

25     opportunity to achieve their greatest abilities, citizens are more productive and society

1    benefits.

2          There are several layers of victims in this case, Your Honor, ultimately society

3    as a whole because society was deprived of individuals being permitted to achieve

4    their greatest abilities and become doctors, lawyers, Judges, engineers, physicists,

5    whatever and we'll never known the extent of that loss, Your Honor.  We'll never know

6    what these people could have achieved had they been provided the means to the

7    best education available to them.

8          So obviously the Detroit Public School System is a victim.  It was deprived of

9    over 2.7 million dollars by Mr. Shy and his fraudulent scheme.  Obviously the

10   taxpayers are victims because that was taxpayer money, but the most serious victims,

11   Judge, are the school children themselves because again they were robbed of their

12   means of developing their greatest abilities. The money that was stolen could have

13   paid for books, laptops, teacher salaries, supplemental teaching materials and a host

14   of other things that would have provided a better education for Detroit school children.

15         So I say to the Court that Mr. Shy, in addition to being a perpetrator of fraud, is

16   a killer of dreams.  He's a thief of hope and we all know that without hope all that

17   remains is despair.  Mr. Shy was a silent killer of dreams, Your Honor,  because at the

18   end of everyday he returned to his luxurious mansion in the suburbs while the Detroit

19   school children that he stole from, many of them under privileged, returned to their

20   homes in Detroit completely unaware of the fact that they had been robbed.

21         And so the United States, Miss Carlson, Mr. Kuebler and myself, we ask the

22   Court to impose a sentence within the Guideline range to reflect the seriousness of

23   this offense, to promote respect for the law and to deter others who are similarly

24   situated.  We seek a sentence that says to anyone out there in a position to commit

25   fraud upon the school system, that it's wrong to steal and it's especially wrong to steal

1    from under-privileged school children and for that reason, Judge, we ask the Court to

2    impose a sentence within the Guidelines between 70 and 87 months.

3                    THE COURT: Thank you, Mr. Buckley.  Mr. Andreoff.

4                    MR. ANDREOFF:  Yes, Your Honor.  Do you wish to have my client

5    present with me at the podium?

6                    THE COURT: If you wish.

7                    MR. ANDREOFF:  Your Honor, I took a substantial amount of time in

8    submitting a lengthy Memorandum to you and attaching those letters from 2000 -- I'm

9    sorry -- from 1993 to 2007 because there's more to the story than just his last four or

10   five years.

11          First, let me put in prospective the timeframe, because in the media I read over

12   and over again that my client's involvement extended to 2015.  Again, that is an error.

13   The last invoices that were submitted I believe were the end of 2013 and/or the first

14   two or three months of March -- up to March of 2014.

15          But just putting that timeframe aside, I'm not here to mitigate or to say that my

16   client has done something that he should be proud of; the opposite.  What he did is

17   wrong and he's accepted responsibility and he's indicated in his August 11th letter to

18   you how ashamed and remorseful he is.  I think those are heartfelt responses, and I

19   hope that you read these other letters which I think indicate a lifetime of history of

20   doing things for other people and going out of his way for people that are even not

21   affiliated with the Detroit Public School System.

22          I understand that you're going to impose a sentence that is sufficient, but not

23   greater than necessary, but I want to say one other thing and I wasn't going to say

24   this, but I'm go to say it and I have history of doing this and I apologize to the Court

25   ahead of time.

1    This fraud would not have occurred -- and let me say that again -- this fraud

2    would not have occurred if 12 or 13 Principal/Administrators of the Detroit Public

3    Schools willingly and knowingly accepted money or things of consideration to accept

4    and approve fraudulent invoices, which were then submitted to the Administrators of

5    Detroit Public Schools to approve for purposes of a purchase order.  If they had stand

6    pat and not breached their fiduciary duties to the School District, and I'm not saying

7    this to mitigate any responsibility to the client -- he's wrong and what he has done is

8    wrong -- but when I read the Government's Sentencing Memorandum what's said

9    here again and I quote that "he's a killer of dreams and a thief."  He may be that as

10   well, but there are others as well and I indicated -- and I wasn't going to do this and I

11   apologize to the Court.  But these are public officials that have a fiduciary duty to

12   either say no when offered with money and what has happened here, and I said this

13   in my Sentencing Memoranda I believe if the Court read it, to avoid unwarranted

14   disparity.

15   I've been on both sides of the fence here and when someone has committed a

16   fraud as an aider or abettor or as a co-conspirator they should be held responsible for

17   the full amount of the fraud that's been perpetrated, in this case the Detroit Public

18   Schools.  Each one of these Principals and/or Administrators that approved a

19   fraudulent invoice started the fraud and they are as much culpable for that fraudulent

20   invoice as my client for paying for and getting the monies.  And in this case you have

21   12 other people and it bothers me, it really, really bothers me.  I didn't go into great

22   detail about this, but the Government didn't  respond to it in their Sentencing

23   Memoranda, but each of these other individuals, these people that are in a fiduciary

24   capacity that could have said no to anything of value, have not been held responsible

25   for one dollar, not one dollar to the Detroit Public Schools other than the amount of

1  the gratuity or the gift or the thing of consideration that they got.  Now I know you.

2  I've known this Court for a long time, and I'm hoping that this Court will take all of that

3  into consideration in imposing sentences, not against just Mr. Shy, but everybody in

4  this case because without those efforts, this fraud would never have been perpetrated

5  and it's been going on for a long time, a long time.  It started when it was first

6  discovered some 10 years ago and I was involved in that Steven Hill investigation and

7  with the Kwame Kilpatrick investigation.  Public officials are in a high level, including

8  public teachers and Administrators and Principals, but I'm not going to say anything

9  more about that because I don't want to ensense (sic) you because -- and I don't want

10  to deflect his responsibility.  He's guilty of this offense.  He has accepted responsibility

11  and let me move on.

12        When he accepted responsibility it didn't happen just before Your Honor on

13  May 11th.  He accepted responsibility many, many months before and admitting his

14  responsibility to the Government.  When we resolved those issues and submitted to

15  this Court on April 29th the Rule 11 Plea Agreement, I immediately started the first

16  week of April of trying to get restitution and the tax liabilities paid. That was done with

17  my client's complete complicity and at that point we spent I can't estimate the number

18  of hours dealing with Mr. Kuebler and submitting to this Court the Stipulated Amended

19  Order of Forfeiture, and I believe depending on the sale of Brookwood Lane which will

20  occur here hopefully in the next 30 or 60 days, the Government will recapture

21  approximately 1.6 million dollars towards the 2.7 million that has been taken from the

22  School District.

23        In addition, I wanted to make sure as it relates to Count Two of the Information

24  that there was approximately $51,000 in tax liability.  That has been paid in full

25  including all the penalties and interest for a total of roughly $90,000.

1          At the time of my meeting with the Federal Government on April 7th, I was

2    informed by the IRS, who I worked closely with, both the Revenue Agent and the CID

3    Agent, that there were other tax liabilities for 2009, '10, '12 and '13 and all of nine, all

4    of '10 and 15,000 of taxes has been paid for 2012.  It was much ado about assets and

5    so forth in the newspapers, but I'm telling you it was spent to pay the IRS and I

6    indicated that to the Revenue Agents as well as the Special Agent in charge of the

7    CID. That is a rare circumstance in this Court.  There are not a lot of defendants I've

8    either represented or that I prosecuted would come forward and make restitution.  In

9    fact, to the contrary.  Most Restitution Orders, as this Court knows, many people other

10   than what's been seized by a Government Agency, they don't cooperate and in this

11   case we even filled out a Financial Statement.  I have never with a client filled out a

12   Financial Statement for a defendant pre-sentencing in 33 years; never.  We did that.

13   We gave Mr. Kuebler the Financial Statement.  We gave him all the documents he

14   requested because we wanted to be as transparent as we could.

15          In addition, I know that punishment is a necessary component of the criminal

16   justice  system.  I understand that and my client understands that.  We know we're not

17   looking at a probation of sentence -- or a probation sentence or a period of community

18   service or anything like that; we understand that, but I made some other arguments to

19   this Court that the Court should give serious consideration to.

20          And specifically what I'm concerned about most importantly, and what Miss

21   Catrell did in her Presentence Investigation Report in four pages indicated his

22   difficulties both medically as well as other difficulties as indicated in the Presentence

23   Report.

24          He has a number of substantial and significant medical conditions.  I have

25   raised the departure or variance downward departure requests for this Court to

1  consider based upon age, physical condition and mental condition as well.  I hope the

2  Court has looked at those and has considered them.  He's going to be 75 years old on

3  October 16th.  I'm very concerned that a lengthy period of incarceration may wind up

4  being a life sentence and maybe potentially be harmful to him.

5  We've discussed those issues and he knows his health and we've shared it

6  with this Court.  I'm very concerned when he surrenders to a Federal institution he

7  has to wear a brace.  I don't know whether the Bureau of Prisons will allow him to

8  wear a brace because he's got neuropathy in his one leg.  I don't know if the Court

9  can indicate something by way of a separate letter to the Bureau of Prisons, but I'm

10  concerned that he'll fall and hurt himself and possibly cause further problems, not only

11  to himself but to the Bureau of Prisons.

12  I'm asking this Court -- I made a recommendation to the Court.  The

13  recommendation was a period of incarceration of 30 to 36 months.  I understand that

14  looked maybe kind of odd to the Court.  You've had a lot of history with me and I've

15  had history with this Court, but I'm very concerned that any lengthy sentence, he may

16  not survive.  The Court knows he had a severe heart issue that occurred some three,

17  four years ago for which he's having treatment for, regularly by the way, and I'm very

18  concerned as indicated in the two appendices I submitted to the Court in Exhibits B

19  and C of the issues dealing with the U.S. Bureau of Prisons, as well as the Office of

20  Inspector General Report concerning the incarceration of older inmates.  I hope

21  you've read those articles because I think this Court has the power within which to

22  tailor its punishment accordingly.

23  The other issue is whatever sentence you impose,  he's going to be on a period

24  of supervised release for a long period of time, two to three years or whatever this

25  Court decides to impose.  I don't think a lengthy period of incarceration -- and I don't

1  know what this Court's feelings are about incarceration or the length of incarceration.

2  I mean over time in my 43 years of doing this, I don't see a lot of recidivists in Federal

3  Court; I really don't -- maybe this Court does -- I do not.  I don't think he's the kind of

4  individual that will be a recidivist or a harm to the community.  He surely has got no

5  businesses or anything that he can do from a public standpoint.  I don't believe he's

6  the type of person after going through this episode for almost two years in his life that

7  he's going to do anything, so I think that's one of the issues that this Court has to

8  consider and I think I've tried to deal with that in my Memorandum.

9          I'm asking the Court to impose a sentence that's sufficient, but not more than

10 necessary.  I think my client would like to say something to the Court.

11         The only other thing I wanted to say to the Court is that you know, I don't know.

12 I'm just hoping that this Court will use its discretion in imposing an appropriate

13 sentence.  I know that the older I've gotten I've seen and feel sincerely that mercy is

14 the highest attribute of a man or a woman in this case, and how much time someone

15 should do for this type of punishment, especially with the efforts we've made over the

16 last actually year and a half, two years in terms of acceptance of responsibility,

17 restitution, payment of fines or payments potentially of fines and/or tax liabilities, I

18 don't know what more he can do except what he's poured out to you in his August

19 11th letter.  I know he would like to say something to you before you impose

20 sentence.

21         THE COURT: Thank you, Mr. Andreoff.  Does the Government have

22 anything to add before I hear from Mr. Shy?

23         MR. BUCKLEY:  No.  Thank you, Your Honor.

24         THE COURT: Thank you.  Mr. Shy.

25         MR. SHY:  If you don't mind, I have never been through anything like

1    this before so I'd like to read --

2              THE COURT: That's fine.

3              MR. SHY:  -- Something it's very short.  Basically, Your Honor, I think it's

4    important that I reiterate to you what I felt was important in my letter of August 11th.

5    As I indicated, there are no words to express how horrible I feel and embarrassed and

6    ashamed I am for the pain and hurt that I have caused my family, my friends and

7    Detroit Public Schools.  I made a horrible mistake by getting involved in this

8    conspiracy, and I accept full responsibility for my part in it.

9         As Mr. Andreoff indicated, I've tried to do the right thing by paying back the

10   taxes, plus interest and penalties and making restitution to the best of my ability. I'm

11   very sorry, Your Honor.

12             THE COURT: All right, thank you.  Thank you.  You can take your seats.

13             MR. ANDREOFF:  Thank you, Your Honor.

14             THE COURT: I'll agree that Mr. Shy's Guideline range here is 70 to 87

15   months.  Nonetheless, the Court is required to conduct an individual assessment of

16   him and impose only a sentence, as Mr. Andreoff says, that is sufficient but not

17   greater than what is necessary to comply with the purposes that are set forth in

18   3553(a); and these purposes are to reflect the seriousness of the offense, to afford

19   adequate deterrence to criminal conduct, to protect the public from further crimes of

20   the Defendant, to provide the Defendant with any needed educational or vocational

21   training or other correctional treatment.

22        In order to achieve these sentencing purposes, the Court must consider

23   several factors.  They are the nature and circumstances of the offense, the history

24   and characteristics of the Defendant, the kinds of sentences that are available, the

25   Guidelines and the Policies, the need to avoid unwarranted sentence disparities

1   among defendants with similar records and found guilty of similar conduct, and the

2   need to provide restitution.

3          I think that all would agree that in this case there are several sentencing

4   purposes that need not be addressed; they're not at issue.  Mr. Andreoff is correct

5   that this Court has no reason to be concerned about Mr. Shy's return to criminal

6   activity or that he would be a recidivist.

7          The Court is not concerned with providing Mr. Shy with any educational or

8   vocational training.

9          The Court does not believe that there's a need to protect the public from Mr.

10  Shy, and the Government and the Defendant have agreed on the amount of

11  restitution.

12         So as I narrowed the list of purposes and considerations, the list got short.  So

13  the purposes to be served that drive this sentence that the Court must impose on Mr.

14  Shy are what sentence will reflect the seriousness of his crimes, Federal Program

15  Bribery and Income Tax Evasion, and what sentence will afford adequate general

16  deterrence to others who might be tempted to engage in bribery and misuse of

17  Federal money and then fail to pay Federal taxes. So that is how the Court has

18  focused its attention.

19         The Government says that the sentence needed to meet those purposes is 70

20  to 87 months; the Defendant says it's 30 to 36 months.

21         So let me address first the nature and circumstances of the offense.  Mr. Shy

22  has pled guilty to numerous Conspiracy charges involving illegal kickbacks to Detroit

23  Public School Principals.  He was the vendor who supplied school supplies to various

24  schools through his company, Allstate Sales.  He operated his company since l974;

25  began supplying Detroit Public Schools shortly thereafter and engaged in this scheme

1    for which he got caught from 2009 until approximately 2014.

2        All of his conspiracies are relevant conduct for purposes of this Court's

3    consideration, although he pled guilty only to the conspiracy involving Clara Flowers.

4        The conspiracies all operated the same.  The Principals had the authority to

5    select Mr. Shy from approved Detroit Public Schools vendor list.  The Principals

6    accepted fraudulent invoices from Mr. Shy which overstated the quantity of supplies

7    delivered, and the supplies that were never delivered included books, computer

8    equipment and other equipment. Mr. Shy got paid for amounts he billed to the tune of

9    nearly $3,000,000.

10       The scheme was a sophisticated one.  He created accounts for each Principal

11   funded by his fraud.  He called these accounts encumbering funds.  The Principals

12   could make withdrawals from these accounts by contacting Mr. Shy and he would

13   make his -- he would earn his money by charging the Principals transaction fees.

14   The evidence indicates here, the records indicate his fees ranged from 40 to 60%

15   depending on the type of request.  Many requests were for gift cards, many were

16   requested by Principals using DPS letterhead.  The evidence in this case shows that

17   Mr. Shy actually kept ledgers of these accounts that he set up for the benefit of the

18   Principals and he kept track of their requests, their transactions, their withdrawals and

19   his commission.

20       Importantly, these records reveal similar transactions with even more Principals

21   than Mr. Shy has pled guilty to.  The Court has before it some indication that at least

22   22 other current and former Principals may be involved in a similar scheme.

23       Mr. Shy failed to pay taxes on his transaction fees.  As the Court stated, he

24   received nearly three million.  He paid out almost one million to the teachers. They

25   used their million for the most part on themselves; some spent them on students.

1   Some payments were made to family members of Principals and on none of this gain

2   did Mr. Shy pay taxes.  Instead, with much of his gain he amassed a fortune in real

3   estate investments and those are the investments that are being sold off now in order

4   to make the restitution that Mr. Andreoff states his client has stepped forward and

5   taken the initiative to make.

6   So in considering the nature and the circumstances of these crimes, to say that

7   they are serious is a gross understatement and indicate a calculated, sophisticated

8   scheme to deprive school children of what is rightfully theirs for personal greed and to

9   line the pockets of one vendor and a handful of Principals.

10   So keeping sight of one of the purposes to be served by this sentence, one

11   that will reflect the seriousness of the offense, the Court concludes that only a

12   substantial custodial sentence can serve that purpose.

13   Now to determine the length of that sentence, the Court must take into account

14   the history and characteristics of Mr. Shy.  The Court received 43 letters, plus his own

15   from family, friends and supporters.  The Court is aware of its duty to consider all that

16   it is urged to in order to know the length of the sentence.

17   The letters submitted on behalf of Norman Shy have common themes.  They

18   speak of his decency, his generosity, his compassion, his kind and good heart, his

19   humanity and concern for fellow human beings and for animals; that he's a wise man

20   with high moral standards and a level head.  That he has a history of generosity to

21   individuals and to charities, even the DPS which predated his crimes.  That he is

22   trustworthy and upright, that he's contributed positively to this community, that he

23   himself is a product of and a l959 graduate of Mumford High School, which has

24   graduated community leaders, athletes, doctors, lawyers, Judges.

25   The adjectives used to distribute Mr. Shy as a person in the life he has lived for

1  nearly 75 years don't mesh with the crimes that he pled guilty to.  The Court is not

2  going to disagree or quarrel with anything that has been said about Norman  Shy.

3  The letters are, as someone said, a testament to a life that was well-lived in many

4  respects and he's given his family members and friends many, many reasons to hold

5  him in high regard and they like this Court and like the Government and like others

6  cannot make sense of this bribery scheme and this fraud.

7       Some letters have even tried to excuse the fraud.  They say it's almost not

8  possible to do business in the city because of an atmosphere of corruption and he

9  almost could not help himself; that he was only trying to help Principals get the

10  supplies that they needed and money was held back so that they could get what they

11  needed when they did in fact need it.  Mr. Andreoff has suggested that Mr. Shy could

12  not have done his crime -- would not have done his crime but for the Principals. One

13  supporter suggested that the DPS challenges and -- did not begin with and will not

14  end with a sentence imposed on Mr. Shy, and that is probably a true statement.

15       But this Court need to the condemn Mr. Shy as a villain or as a terrible person,

16  but in exercising his power to choose he made bad decisions and we are all placed in

17  situations where we mute resist or succumb to the power of temptation and it often is

18  an intense personal struggle.This Court does not know what struggles Mr. Shy may

19  have gone through between 2009 and 2014 as he submitted numerous, numerous

20  fake invoices.

21       What I will say is that Mr. Shy's entire life and the good that he has done do

22  matter and they do count for something as this Court tries to figure out the length of

23  his sentence.

24       Mr. Andreoff has asked the Court to also take into account certain provisions

25  under our Sentencing Guidelines; his age, under Guideline provision 5H1.1 -- that

1   soon will be 75 years; his mental and emotional conditions under 5H1.3, his physical

2   condition and the Court is allowed to do that under 5H1.4. This Court is not going to

3   outline Mr. Shy's health and infirmities.  They are well outlined in the Presentence

4   Investigation Report.  The Court will summarize by saying he has had numerous

5   surgeries, back surgeries, hip replacement, cardiac issues and neurological ones.  He

6   takes numerous medications.

7       So the Court in reviewing that entire record says that there -- or concludes that

8   there's no question these factors either individually or in combination could justify a

9   departure below the Guidelines.

10      The last issue for the Court to discuss here before announcing the sentence is

11  that the last remaining purpose under 3553, and that is to consider deterrence, and to

12  answer the question what kind of sentence will also afford adequate deterrence to

13  others who might be compelled to engage in similar criminal conduct.

14      As stated above, the Court does not believe that there is a need to specifically

15  deter Mr. Shy from the commission of other crimes or to incapacitate him, but given

16  the notoriety and the seriousness of the offense, the seeming ease at which crimes

17  like this can be committed, the fact that the United States continues to investigate

18  vendor fraud, the fact that the futures of our children are at stake and the need to

19  promote respect for the law, this Court does believe it is important to at least make the

20  attempt to send a message to others; they may not get it.

21      The Government does have an interest in protecting the vast sums of money

22  distributed through Federal programs from theft, from fraud and undue influence by

23  bribery.  Any number of vendors now stand in the shoes of Mr. Shy who can be

24  chosen by Principals to supply schools and they too may be tempted to enrich

25  themselves at the expense of our children.

1    It is sometimes tempting for Courts to look at a life and to look at a person like

2    Mr. Shy, a white-collar criminal so-to-speak, and conclude that no good purpose will

3    be served by prison given his significant contributions and good qualities, but the

4    Court is obligated to impose a sentence that reflects a balanced view of this otherwise

5    exemplary life on one side and the misconduct on the other.

6    It may be debatable, Mr. Andreoff certainly argues this in his Sentencing

7    Memorandum, that significant sentences deter other crimes. Nonetheless, the Court

8    believes that deterrence of others is a laudable goal and that Courts must uphold it

9    and abide by it and examine it in imposing sentence.

10   Principals and chosen vendors are not above the law. They must respect it as

11   all are called upon to do. So the sentence that the Court imposes here is not just for

12   Norman Shy; it is for this community that he was called upon to serve.

13   Our children are priceless. They are entitled to every dime and every book

14   sent their way, plus more than that and there should be no immunity from the

15   consequences of this type of fraud on our children.

16   The Court has balanced everything, Mr. Shy, that is in this record and has

17   concluded that there simply is not enough ethical credit for you to dodge a lengthy

18   sentence. He said himself in his letter to the Court that "none of the good things that I

19   have done over the years justifies all of the harm that I have caused DPS." That's a

20   quote.

21   The Court, pursuant to the Sentencing Reform Act of 1984, has considered the

22   Sentencing Guidelines and the factors contained in 3553(a). The Court does commit

23   Mr. Norman Shy to the custody of the Bureau of Prisons for a term of 60 months.

24   Upon release from prison he's placed on supervised release for a period of two

25   years.

1       It is further ordered that Defendant pay a Special Assessment of $100 on each

2   count for a total of $200; it is due immediately.

3       The Court waives the imposition of a fine, the cost of incarceration and the cost

4   of supervision due to Defendant's lack of financial resources.

5       With respect to Count One, Defendant is ordered to pay restitution in the

6   amount of $2,768,840.93.

7       Defendant is also to participate in the Inmate Financial Responsibility Program.

8   The Court is aware of the requirements of that program and approves the payment

9   schedule and orders Mr. Shy's compliance.

10       Mandatory drug testing is suspended based the Court's determination that he

11   poses a low risk of substance abuse.

12       While on supervision, Defendant is to abide by the standard conditions adopted

13   by this Court.  Due to the nature of this offense, the following special conditions are

14   also ordered:  He's not to incur any new credit charges or open additional lines of

15   credit without approval of Probation.  He is to provide Probation access to any

16   requested financial information.  He's to make monthly installment payments on any

17   remaining balance of restitution and special assessments at a rate and schedule

18   recommended by Probation.

19       He's to make arrangements with the IRS regarding a monthly payment plan

20   With respect to any outstanding back taxes, plus any penalties or interest that may on

21   accrue, and he's to provide a payment arrangement schedule with the IRS to

22   Probation.

23       Defendant is also to fully cooperate with the IRS by filing all delinquent or

24   amended Returns within 90 days of this sentence and to timely file all future Returns

25   that come due during the term of probation or supervised release.

1       Defendant is to properly report all correct taxable income and claim only

2   allowable expenses on those Returns.  He's to provide all appropriate documentation

3   in support of these Returns and upon request, Defendant is to furnish the IRS with

4   information pertaining to all assets and liabilities and he's to fully cooperate by paying

5   all taxes, interest and penalties due and otherwise comply with the tax laws of the

6   United States.

7       I also have received the Government's proposed forfeiture language for

8   inclusion in the Judgment.  You have received this, Mr. Andreoff?

9           MR. ANDREOFF:  Yes I have, Your Honor.  I have no objection to its

10  entry.

11          THE COURT: All right, that will be included in the Judgment.  That is the

12  sentence of this Court, Mr. Shy.  Is there any objection to it?

13          MR. SHY:  No, Your Honor.

14          THE COURT: Any objection to the sentence from any side?

15          MR. BUCKLEY:  No.  Thank you, Your Honor.

16          MR. ANDREOFF:  Your Honor, would the Court consider -- thank you,

17  Your Honor.  The sentence that's been imposed, that applies to both Counts One and

18  Two of the Information, Your Honor? Concur --

19          THE COURT:  (Interjecting) It does, yes.

20          MR. ANDREOFF:  Your Honor, so I understand.  I don't mean to -- can I

21  just have a moment, Your Honor?

22          THE COURT: Yes.

23          MR. ANDREOFF:  Your Honor, I understand this may be nonbinding on

24  the Court.  I've discussed the matter regarding incarceration with my client.  Would

25  the Court consider recommending -- I understand it's nonbinding -- a facility at

1    Morgantown, West Virginia?

2            THE COURT: That certainly can be put into the Judgment, Mr. Andreoff.

3            MR. ANDREOFF:  Thank you very much, Your Honor.

4            THE COURT: Anything else?

5            MR. BUCKLEY:  Advice of the right to appeal, Your Honor.

6            THE COURT: Yes.  I mean we're done with any objections?

7            MR. BUCKLEY:  Oh yes.  Thank you, Judge.

8            THE COURT: So, Mr. Shy, you entered into a Rule 11 Plea Agreement

9    with the Government which addressed appellate rights; you forfeited them.

10   Nonetheless, the Court does inform you that you may still have certain appellate

11   rights.  Typically they must be exercised within 14 days of imposition of sentence and

12   if you cannot afford a lawyer, the Clerk of the Court can provide the necessary

13   assistance to you.

14        Mr. Shy, you will be notified by the Bureau of Prisons.  It will tell you when and

15   where to report.

16           MR. ANDREOFF:  Your Honor, may myself and Mr. Buckley approach

17   for one moment off the record or it can be on the record.  I don't care.

18           THE COURT: On or off the record?

19           MR. ANDREOFF:  Just so we can talk to the Court.  However, the Court

20   wishes.

21   **(Bench conference between the Court and Counsel, on the record out of the**

22   **hearing of the courtroom galley as follows)**

23           MR. ANDREOFF:  Your Honor, when the Court imposed a 60-month

24   sentence, does that mean on Count Two it runs the same sentence concurrent?

25           THE COURT: It's Count One and Two running concurrent.

1        MR. ANDREOFF:  I did not hear the Court.  Thank you.

2        **(END OF SIDEBAR CONFERENCE)**

3        THE COURT: All right.  Anything further?

4        MR. BUCKLEY:  No.

5        MR. ANDREOFF:  Thank you.  No, Your Honor.  Thank you very much.

6        THE COURT: We're adjourned.  Thank you.

7        **(Proceedings adjourned at about 11:20 a.m.)**

8                          - - -

9        **COURT REPORTER'S CERTIFICATION**

10

11   STATE OF MICHIGAN)

12                    )  SS.

13   COUNTY OF WAYNE  )

14

15       I, Janice Coleman, Federal Official Court Reporter, in and

16   for the United States District Court for the Eastern District

17   of Michigan, do hereby certify that pursuant to Section 753,

18   Title 28, United States Code, that the foregoing is a true and

19   correct transcript of the stenographically reported proceedings

20   held in this matter and that the transcript page format is in

21   conformance with the regulations of the Judicial Conference of

22   the United States.

23

24                     /S/ JANICE COLEMAN

25                     JANICE COLEMAN, CSR NO. 1095, RPR



1                   FEDERAL OFFICIAL COURT REPORTER

2

3    DATED:   May 15, 2017